The defendant, a Delaware corporation, with its factory in Newark, New Jersey, was declared insolvent September 19th, 1928, and Frederick Herrigel, Jr., a member of the Essex bar, was appointed receiver. The decree of insolvency was consented to by the company in an answer filed by its solicitor, Herbert L. Elins, who acted for William Harris, his employer, the complainant's counsel. Frederick J. Israel was appointed counsel to the receiver.
The company manufactured radio tubes. Its assets, which came to the receiver, were machinery and tools which he sold for $1,150, book accounts inventoried at $2,000 (all disputed), cash items of $300, and a claim against the Radio Corporation for a violation of the Clayton act, which was settled by the receiver for $25,000, and after New York attorneys' *Page 2 
fees, netted the estate $18,320.71. The preferred debts are $2,518.90; the common debts $22,575.33.
The receiver's account was approved November 17th, 1931, and he was allowed $3,500; his counsel $3,400; the solicitor for the defendant company $3,000 and $250 expenses; an accountant $2,000; appraisers $100, and auctioneer $75. The allowances were made after due notice to all creditors and there was no objection.
Two months later the present petitioner, Conrad Schickerling, moved before the vice-chancellor having the matter in charge, upon petition, to vacate the order approving the account and granting the allowances, and being denied and without filing the moving papers and entering an order on the denial, three months later presented the petition to the late chancellor, who ordered the parties to show cause why relief should not be granted. The chancellor, only because he was too ill to hear the matter, put upon me the delicate task of reviewing the judgment of the vice-chancellor, with directions to advise him.
There is no specific prayer for a rehearing, but that is obviously the object of the petition and it will be so treated.
It is objected that the petition to rehear comes too late because, as contended, it was filed after the time for taking an appeal had expired. The soundness of the point, if this were a motion for a rehearing in a cause inter partes, would depend upon whether the order was interlocutory or final. Counsel submits, that the final decree in the cause is the one declaring the corporation insolvent. That is true, upon the issue of insolvency. Pierce v. Old Dominion, c., Smelting Co.,67 N.J. Eq. 399. But the order approving the receiver's account and discharging him is the final decree in the administration of the trust assumed by the court upon declaring the corporation insolvent. The year allowed for taking appeals from final decrees had not expired when the petition was filed.
It is argued that the order was not a final decree because it is captioned "order." The body of the order counts. The words "ordered and adjudged and decreed" speak its character; the legal definition is found in its effect. *Page 3 
However, the rule of law limiting application for rehearing of causes between litigants to the time fixed by the statute for appeals is, I apprehend, not binding upon the chancellor in his dealings with receivers and their counsel in the corrections of errors in the administration of trust estates confided to them. They are his officers and mere lapse of time is not an escape to amenability. Delay may be fatal to an appeal to the chancellor to exercise his sound legal discretion in granting a rehearing, but it is not a limitation upon his power. "The court always inclines to grant it (rehearing) upon the usual certificate of counsel if, upon the matters stated in the petition, there is apparent ground for apprehending that an error has been committed or an injustice done by the decree, or if there is reason for believing that a further and fuller argument will shed new light upon the controversy to advance the ends of justice." New Jersey ZincCo. v. New Jersey Franklinite Co., 14 N.J. Eq. 308.
Another objection to a rehearing is that Schickerling had notice of the motion for the order he seeks to vacate and failed to respond and object. Schickerling, in writing, directed the receiver to send all notices in relation to his claim to his attorney, Elins, and a copy of the order to show cause why the account should not be approved and allowances made and notice of the fees sought was sent to and received by Elins. That is sufficient to protect the receiver and estops Schickerling as against the receiver. Ordinarily, one who defaults upon notice has no standing to later complain, except for fraud or gross mistake. Elins says, and there is no doubt, that he forwarded the documents by mail to Schickerling. Schickerling denies receiving it and avers that he first knew of the allowances when Elins gave him his dividend checks and that then Elins told him he had received nothing. That he received nothing is true; his employer, Harris, got the fee, but Elins did not tell him that, at least Elins does not say he did. The indications are that Schickerling knew more of what was happening than he admits. Be that as it may, if there was cause for objection, it was his right to rely on Elins to make the objection. It may be that the conflict *Page 4 
between Elins' interest in his employer, Harris, and his duty to Schickerling led to his confusion.
It is also set up that the petition for a rehearing is prompted by Elins' and Israel's refusal to accede to Schickerling's demand for a division of the fees, and the proofs support the charge that Schickerling tried the indirect method and threatened to make trouble. But if there is cause for complaint, the petitioner's motive is immaterial. If the petitioner ultimately succeeds, he and his family will be the chief gainers. He and they are the heaviest creditors of the defunct concern; their claims aggregate $16,000 of the $22,000 of debts due general creditors.
The prayer of the petition to vacate the approval of the account and the discharge of the receiver, asks that the receiver account for the book accounts; to revise downward some of the allowances and to disallow others; to compel the recipients to make restitution, and to remove the receiver and his counsel for misfeasance.
The book accounts were reported by the receiver "that he had made diligent efforts to collect the accounts receivable, but found that most of them were disputed for various reasons." The receiver charged himself with them in his inventory and appraisement and the more orderly course would have been to set them up in his account as a discharge. However, the proof is quite satisfying that his report was true and that all the accounts were in dispute or valueless and their collectibility precarious, that litigation would be costly and the probabilities were against recovery. Further suits and defenses that the materials sold, representing the accounts, were defective would have jeopardized the claim of the company against the Radio Corporation which unquestionably would have seized upon the defenses as accounting for the losses the company attributed to the Radio Corporation's violation of the Clayton act. It was a double-edged razor and Schickerling acquiesced in the abandonment of suits to recover the accounts and in the circumstances the receiver is absolved.
The receiver's allowance is not open to serious criticism. Schickerling expressed himself to the receiver, shortly after *Page 5 
the allowance was made, that he was deserving of the amount, and as to this there can be no well founded disagreement.
The allowances to counsel for the receiver, according to this statement of services, it would appear, includes items of work ordinarily imposed upon the receiver and for which he was compensated. There cannot be double compensation. The legality of the allowance in its full measure is appropriately the subject of further inquiry.
The allowance to Elins for Harris, as it is presently viewed, finds no support in our established practice. Harris was counsel to the company and, through Elins, represented the members of the Schickerling family in the collection of their claims against the defunct corporation. The two lawyers served the company in consenting to the receivership. Later they rendered some, and perhaps considerable, aid in pressing and adjusting the settlement with the Radio Corporation. These services, as it appears upon this motion, were rendered, not to or at the instance of the receiver, but, in the interest of their clients as creditors to enhance the assets to the advantage of their dividends, and it would seem that their compensation should have come from their clients. Of course, upon further consideration, upon a rehearing, counsel may be able to persuade the court of the correctness of the allowance and until then there will be an open mind, but it is deemed fit to again hear the matter.
The appraisers were allowed and paid $100 apiece, but through an inadvertance in the order, it is said, $100 was allowed the two. The criticism is not without merit and the item will be again discussed.
The auctioneer's bill of $75, which included outlay of $25, is not deemed unjust.
The accountant's bill of $2,000 has been carefully examined as well as the proofs. It is felt that the charges are well within the customary compensation of certified public accountants for such services. His itemized bill shows that he worked forty-one days and four and one-half hours on the books, between September 19th, 1928, and November 5th, 1931. The work involved an analysis of the company's operations for the years 1925, 1926, 1927 and 1928, to establish *Page 6 
an alleged loss to the company's business due to the alleged misconduct of the Radio Corporation and the basis for a claim for damages, which results in the settlement of $25,000.
The motion to remove the receiver and his counsel for negligence in the prosecution of the Radio Corporation suit is without merit or justification. Both receiver and counsel worked assidiously and conscientiously, perhaps overzealously, to recover on this questionable claim, and in the compromise, had the concurrence of the petitioner. The charge of neglect is nothing short of malicious and is dismissed.
The order approving the account will be opened, but only for the purpose of a rehearing on the allowance to the counsel of the receiver, to Mr. Elins, for his employer, Harris, who will be joined as a party, and to the appraisers.