The problem is, have taxes or wages priority of payment out of assets in the hands of a receiver of an insolvent corporation?
Section 83 of the Corporation act of 1896 gives wages, earned within two months of the proceedings in insolvency, a first lien upon the assets of insolvent corporations in the hands of a receiver. Section 84 provides that the lien shall *Page 384 
be prior to all other liens which can or may be acquired upon the assets (except certain chattel mortgages). The sections are, substantially, re-enactments of the act of 1892. P.L. p. 426.
The act of March 26th, 1896 (Comp. Stat. p. 5182), requires receivers of insolvent corporations to pay taxes out of the first money in hand "provided, however, that nothing in this act contained shall in any way affect the lien of employes now preferred by law." At that time taxes on tangible personal property used by the owner in business were a lien for one year.
Later, by section 39 of the General Tax act of 1903 (Comp.Stat. p. 5124), now section 513 of the 1918 revision of the Tax act (Cum. Supp. Comp. Stat. p. 3499) taxes on personal property were declared to be the first lien. Township of Cranbury v.Chamberlain Barclay, 6 N.J. Mis. R. 39; 105 N.J. Law 236. The lien was not interrupted by the revision. Randolph v. Larned,27 N.J. Eq. 557.
The inquiry is whether the priority of the Tax act lien on personal property displaces the priority of the Corporation act lien on assets in a receiver's hands and by implication repeals the proviso of the act of March 26th, 1896, deferring taxes to wages. Ordinarily, the latest designated to be the first lien would be paramount. Franz Realty Co. v. Welsh,86 N.J. Eq. 228. But if the domain of these statutes is not common and the acts may be reconcilable with coexistence, the priority of each, within its particular field of operation, prevails. The rule of Roche v. Mayor, c., of Jersey City,40 N.J. Law 257, that a comprehensive legislative scheme is exclusive, is not involved; neither of the principal acts is inclusive of the subject-matter of the other. Seeking the intention of the legislature, we are guided by the rule, that repugnance alone will defeat an earlier and sustain the later statute as the ultimate expression of the legislative will, and only clear inconsistency warrants repeal by implication.
Personal property of insolvent corporations in custodia legis,i.e., assets in the hands of a receiver, has been the subject of the lien of labor in some form ever since 1849 (Nix. *Page 385 Dig. 46), and as Chancellor Green said in Bedford v. NewarkMachine Co., 16 N.J. Eq. 117, it seemed probable that the statutes giving the preference "were adopted not only to secure remuneration to operatives, but upon a principle of sound public policy to encourage manufacturers by inducing the operatives to continue their labor notwithstanding the inability, real or apprehended, of the employer to pay their wages" — not to desert the sinking ship. This sentiment is as profoundly apposite to-day as then, and marked evidence of its recognition and approval is found in the legislature's failure to repeal the act of March 26th, 1896, when, upon passing the General Tax act, it, with scrupulous care, repealed every statute on taxes it conceived to be inconsistent or should not longer exist. P.L. 1903 p. 436.
The act of March 26th, 1896, thus searched out and retained, expressly reserved the priority of wages over taxes on receiver's assets, and permitting it to stand is persuasive that the priority of the lien of taxes under the General Tax act, though universal of application and comprehensive of all personal property, was intended to be secondary to the lien of wages when personal property became assets in the hands of a receiver, viz., trust funds in the custody of the law, to be administered under the Corporation act in the order of priority there defined.
The General Tax act leaves undisturbed sections 83 and 84 of the Corporation act, and without the slightest implication that the preference which for nearly a century had been accorded to labor, should be subordinated, or the proviso of the act of March 26th, 1896, be annulled. The integrity of the earlier acts as such, is unimpaired; they remain living and vital and purposeful statutes by legislative leave, and the inference is pressing that priority of the lien of taxes was not intended to supervene the lien of wages and to overthrow an established policy and to bring to an end the privilege of workmen of insolvent corporations which, by the grace of legislature, they so long enjoyed. In truth, we find some evidence in the act itself supporting the inference. After providing that taxes shall be and remain a first lien or charge *Page 386 
upon the property or person, it prescribes that they shall be "collectible in the manner provided by law." The act of March 26th, 1896, is essentially a "manner" for the collection of taxes from insolvent corporations (in strict equity procedure, it is the exclusive manner of collecting such taxes) and it is reasonably inferable that it was the legislative intent, when so collected, they should be paid after wages as the proviso of the act directs.
Wages are a first lien, prior to taxes.